IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STEPHANIE FLORES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 3:18-cv-00924-G (BT) |
| | § | |
| PENNYMAC LOAN SERVICES, LLC, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court in this civil action is Defendant's Motion for Summary Judgment (ECF No. 11). For the following reasons, the District Court should GRANT the Motion and DISMISS Plaintiff's claims with prejudice.

**Background**

This action arises out of Defendant PennyMac Loan Services, LLC's (PennyMac) attempted foreclosure of Plaintiff Stephanie Flores's real property located in Grand Prairie, Texas (the "Property").Flores obtained a mortgage loan (the "Loan") from Acopia, LLC on September 27, 2013. Pl.'s Original Pet. 3 (ECF No. 1-5); Def.'s App. 10-12 (ECF No. 13). In connection with the Loan, Flores executed a Note (the "Note") in favor of Acopia, LLC and a Deed of Trust (the "Deed of Trust") securing repayment of the Note with the Property. Pl.'s Original Pet. 3; Def.'s App. 106-19. PennyMac began servicing the Loan on November 1, 2013. Def.'s App. 14-19. Then, on November 4, 2013, PennyMac notified Flores that the

1

Loan had been sold to PennyMac on October 9, 2013, and that PennyMac also serviced the Loan. *Id.* 20. On January 4, 2016, Mortgage Electronic Registration Systems, Inc. (MERS), as nominee for Acopia, LLC, assigned the Deed of Trust to PennyMac. Pl.'s Original Pet. 2-3; Def.'s App. 121-28.

Flores made periodic payments on the Loan from 2013 to 2017. Def.'s App. 6-7. Flores failed to submit her monthly payment due July 1, 2017, which PennyMac contends remains due. *Id.* 22-60; Def.'s Br. Support 10 (ECF No. 12). On June 22, 2017, PennyMac sent Flores a notice of default specifying the amount to cure the default and further cautioning that to avoid acceleration Flores must pay the amount by July 27, 2017. Def.'s App. 68-82. Flores was unable to cure her default by July 27, 2017, *id.* 5-8, 22-60, so PennyMac accelerated the Note and provided Flores notice of acceleration on January 31, 2018. *Id.* 87-90.

After PennyMac initiated foreclosure proceedings against the Property, Flores filed an Original Petition and Application for Temporary Restraining Order in County Court at Law No. 3 of Dallas County, Texas, alleging PennyMac lacks the capacity to foreclose on the Property. Pl.'s Original Pet. Flores also alleges PennyMac failed to adequately service her mortgage loan and failed to offer her a loan modification. *Id.* Based on these allegations, Flores brings causes of action against PennyMac for violations of the Texas Debt Collection Act (TDCA), violations of the Texas Property Code, and breach of contract. Plaintiff also seeks a declaratory judgment to void any substitute trustee's deed affecting the Property and an injunction to prevent foreclosure, as well as damages and attorney's fees.

The state court issued a temporary restraining order (TRO) preventing the foreclosure sale. TRO at 2-5 (ECF No. 1-9).

Thereafter, PennyMac filed an answer (ECF No. 1-10) in state court and then removed the case to this Court on the basis of diversity jurisdiction. Removal Notice (ECF No. 1). PennyMac filed the pending Motion for Summary Judgment on February 19, 2019, in which it argues it is legally entitled to foreclose on the Property because it is the holder of the Note secured by the Deed of Trust encumbering the Property and because it is both the "mortgagee" and the "mortgage servicer" as defined in the Texas Property Code. Def.'s Br. Support. PennyMac further argues that Flores's claims for violations of the TDCA and the Texas Property Code and for breach of contract fail as a matter of law. *Id.* Flores filed a response (ECF No. 16), and PennyMac filed a reply (ECF No. 18). The Motion is fully briefed and ripe for adjudication.

## Legal Standard

Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the

record which reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The pleadings, discovery and disclosure materials on file, and affidavits, if any, must demonstrate that no genuine issue of material fact exists. Fed. R. Civ. P. 56(c).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. To carry this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citations omitted). Instead, the non-movant must show that the evidence is sufficient to support a resolution of the factual issue in his favor. *Anderson*, 477 U.S. at 249 (citation omitted).

While all of the evidence must be viewed in a light most favorable to the non-movant, *id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions satisfy the non-movant's summary-judgment burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam) (en banc) (citations omitted); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). Summary judgment in favor of the movant is proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to his case on which he will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322-23.

Courts have no obligation under Fed. R. Civ. P. 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment." *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 164 (5th Cir. 2006) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)). Instead, a party opposing summary judgment must "identify specific evidence in the record" that supports challenged claims and "articulate the precise manner in which that evidence supports [a challenged] claim." *Ragas*, 136 F.3d at 458 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)).

## Analysis

### Capacity-Based Claims

Flores first argues that PennyMac does not have the capacity as a mortgagee or a mortgage servicer to judicially foreclose on the Property. Pl's Original Pet. 3-5. Flores's capacity-based claims fail as a matter of law, however, because the summary-judgment evidence demonstrates PennyMac's capacity to foreclose.

PennyMac is entitled to foreclose both as a "mortgagee" and a "mortgage servicer" as defined in the Texas Property Code. Under Texas law, either a mortgagee or mortgage servicer can administer foreclosure proceedings on a property. Tex. Prop. Code. §§ 51.002, 51.0025. A mortgagee is defined as "(A) the grantee, beneficiary, owner, or holder of a security instrument; (B) book entry system; or (C) if the security interest has been assigned of record, the last person to whom the security interest has been assigned of record." *Id.* § 51.0001(4). And under § 51.0001(3), a mortgage servicer is defined as "the last person to whom a

5

mortgagor has been instructed by the current mortgagee to send payments for the debt secured by a security instrument. A mortgagee may be the mortgage servicer." *Id.* § 51.0001(3).

With respect to PennyMac's status as a mortgagee, the assignment of the Deed of Trust from MERS, as nominee for Acopia, LLC, to PennyMac was recorded in 2016, well in advance of the appointment of a substitute trustee or the foreclosure sale of the Property. Def.'s App. 121-28. The summary-judgment evidence demonstrates that PennyMac qualifies as a mortgagee authorized to foreclose on the Property because PennyMac is both a grantee and "the last person to whom the security instrument has been assigned of record" under Texas Property Code § 51.0001(4). "When MERS executed the assignment to [PennyMac], [PennyMac] obtained all of MERS's rights and interest in the deed of trust . . . , including the 'right to foreclose and sell the Property.'" *Bierwirth v. BAC Home Loans Servicing, L.P.*, 2012 WL 3793190, at *4 (Tex. App.—Austin Aug. 30, 2012, pet. denied) (citations omitted); *see also Farkas v. GMAC Mortg., L.L.C.*, 737 F.3d 338, 342 (5th Cir. 2013) (per curiam) ("Our holding in *Martins* permits MERS and its assigns to bring foreclosure actions under the Texas Property Code."); *Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 253-56 (5th Cir. 2013) (holding that assignee of deed of trust from MERS has authority to foreclose).

With respect to PennyMac's classification as a "mortgage servicer," PennyMac informed Flores that her Loan transferred to PennyMac. Def.'s App. 10-

6

20. Additionally, Flores made periodic payments to PennyMac between 2013 and her eventual 2017 default. *Id.* 22-60. Because she made payments to PennyMac as servicer, she cannot now deny that PennyMac is the mortgage servicer. *See Farkas*, 737 F.3d at 344 (holding that doctrine of quasi-estoppel bars borrower from challenging defendant's status as mortgage servicer based on payments borrower made to defendant over an 18-month period). Thus, the summary-judgment evidence establishes as a matter of law that PennyMac is entitled to dismissal of Flores's capacity-based claims.

## Texas Debt Collection Act Claims

PennyMac also moves for summary judgment on Flores's claims under the Texas Debt Collection Act (the "TDCA"). The TDCA prohibits debt collectors from using threats, coercion, or other wrongful practices in the collection of consumer debts. *See Gomez v. Wells Fargo Bank, N.A.*, 2010 WL 2900351, at *3 (N.D. Tex. July 21, 2010); *Brown v. Oaklawn Bank*, 718 S.W.2d 678, 680 (Tex. 1986). "To state a claim under the TDCA, a plaintiff must allege that: (1) the debt at issue is a consumer debt; (2) the defendant is a 'debt collector' within the meaning of the TDCA; (3) the defendant committed a wrongful act in violation of the TDCA; (4) the wrongful act was committed against the plaintiff; and (5) the plaintiff was injured as result of the defendant's wrongful act." *Brinkley v. PennyMac Loan Servs., LLC*, 2018 WL 6004309, at *6 (N.D. Tex. Oct. 22, 2018), *adopted by* 2018 WL 5995444 (N.D. Tex. Nov. 15, 2018) (citing Tex. Fin. Code §§ 392.001 *et seq.*). Flores avers PennyMac violated three sections of the TDCA: (1) Texas Finance

7

Code § 392.301(a)(8) for threatening to foreclose on the Property; (2) Texas Finance Code § 392.303(a)(2) for attempting to collect charges incidental to the Loan; and (3) Texas Finance Code §§ 392.304(a)(8) and (19) by making false representations or utilizing deceptive means to collect a debt. Pl.'s Original Pet. at 5-6.

Flores alleges PennyMac violated § 392.301(a)(8) because it "failed to give notice before giving notice of acceleration and substitute trustee's sale . . . and/or wrongfully gave such notice due to lack of capacity at the time of any such notice." *Id.* 5, ¶ 5.a.1. Flores also alleges that the notice of sale she concedes PennyMac provided was improper "because of the [alleged] lack of proper preceding notices" (*i.e.*, the default notices). *Id.* 5, ¶ 5.a.2.

PennyMac is entitled to summary judgment on Flores's claim under § 392.301(a)(8). First, as demonstrated above, PennyMac's summary-judgment evidence confirms PennyMac's authority to foreclose and to send foreclosure notices. Second, PennyMac's summary-judgment evidence establishes PennyMac provided Flores with statutorily compliant notices. Under the Texas Property Code, a mortgage servicer must serve a notice of default by certified mail and provide at least 20 days to cure before accelerating a loan. *See* Tex. Prop. Code § 51.002(d). PennyMac sent a notice of default on June 22, 2017, to Flores via certified mail specifying the amount to cure the default and stating that the amount needed to be paid on or before July 27, 2017, to avoid acceleration. Def.'s App. 68-79. Thus, PennyMac sent Flores a default notice by certified mail that provided her

more than 20 days to cure her default. Flores was unable to cure her default by July 27, 2017. *Id.* 21-60. PennyMac, however, did not accelerate the Loan until January 31, 2018—long after the statutorily mandated 20-day cure period. *Id.* 87-91. Because PennyMac's notice of default complies with the Texas Property Code, PennyMac did not violate § 392.301(a)(8) as a matter of law.

For her second claim arising out of the alleged violation of the TDCA, Flores alleges that PennyMac violated Texas Finance Code § 392.303(a)(2) by failing "to properly account for and acknowledge payments made" through at least December 2017. *See* Pl.'s Orig. Pet. at 5, ¶ 5(b). Under § 392.303(a)(2), a debt collector may not use unfair or unconscionable means to collect or attempt to collect interest or a charge, fee, or expense incidental to the debt that is not expressly authorized by an agreement creating the obligation or legally chargeable to the consumer. To state a claim under § 392.303(a)(2), a plaintiff must make more than a general assertion of "wrongful charges" and must identify the unauthorized fees or penalties that a defendant imposed. *See Williams v. Wells Fargo Bank, N.A.*, 560 F. App'x 233, 240 (5th Cir. 2014) (per curiam) (holding that a "general assertion of 'wrongful charges' is insufficient to state a claim under section 392.303(a)(2)"); *Westinde v. JPMorgan Chase Bank, N.A.*, 2014 WL 4631405, at *8 (N.D. Tex. Sept. 16, 2014) (granting a motion to dismiss a § 392.303(a) claim where "Plaintiff fail[ed] to identify any fees or penalties incidental to his loan that Defendant imposed"); *Bircher v. Bank of N.Y. Mellon*, 2012 WL 3245991, at *3, 7 (N.D. Tex. Aug. 9, 2012) (dismissing a § 392.303(a)(2) claim where the "petition contain[ed]

scant factual specificity regarding any misrepresented amounts"); *Swim v. Bank of Am., N.A.*, 2012 WL 170758, at *6 (N.D. Tex. Jan. 20, 2012) (dismissing a § 392.303(a)(2) claim where "Plaintiffs merely state a conclusory assertion that Defendants imposed wrongful charges on Plaintiffs' mortgage account"). Here, Flores alleges generally that PennyMac attempted to collect charges from Flores that were "not expressly authorized by the Deed of Trust and/or Note and legally chargeable." Pl.'s Original Pet. 5. Flores does not identify any specific wrongful charges. *See id.* Additionally, by its plain language, § 392.303(a)(2) does not entitle a borrower to any "account[ing] for" or "acknowledg[ing]" of payments on a loan. *See id.* 5-6; Tex. Fin. Code § 392.303(a)(2). A failure to "properly account for and acknowledge payments," therefore, is not actionable under § 392.303(a)(2), and Flores has not presented evidence that PennyMac used "unconscionable means" to either "collect or attempt to collect interest or a charge, fee, or expense incidental" to the Loan. To the contrary, PennyMac has presented competent summary-judgment evidence showing that it properly accounted for all payments on the Loan. Def.'s App. 21-60.

Flores also contends PennyMac violated § 392.303(a)(2) by threatening to conduct a foreclosure sale "and thus to deprive Plaintiff of title, use and possession of the Property thereby." Pl.'s Orig. Pet. 6, ¶ 5.b.2. Again, because this allegation is unrelated to any attempt to collect interest or fees and does not implicate § 392.303(a)(2), it cannot support such a claim. As explained herein, PennyMac has authority to foreclose on the Property. PennyMac's efforts to foreclose on the

10

Property are not actionable violations under the TDCA.

For her final claim under the TDCA, Plaintiff alleges that PennyMac violated §§ 392.304(a)(8) and (a)(19) by: (1) failing to properly account for and acknowledge payments through December 2017, (2) demanding payments in amounts above what was due on the Loan, and (3) not sending Flores a promised loan modification package. *Id.* 6, ¶ 5(c). Texas Finance Code § 392.304(a) prohibits a debt collector from using a fraudulent, deceptive, or misleading misrepresentation that employs certain enumerated practices in attempting to collect a debt or obtain consumer information. To qualify as a violation under the TDCA, the debt collector's misrepresentation "must have made an *affirmative statement* that was false or misleading." *Thompson v. Bank of Am. Nat'l Ass'n*, 783 F.3d 1022, 1026 (5th Cir. 2015) (emphasis in original) (internal quotation marks and citations omitted). In analyzing the relevant statutory provisions and the summary-judgment evidence, the Court finds that PennyMac did not violate § 392.304(a)(8) or (19) as a matter of law.

First, Flores fails to present evidence demonstrating PennyMac violated § 392.304(a)(8). Under § 392.304(a)(8), debt collectors are prohibited from "mispresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding." Tex. Fin. Code § 392.304(a)(8). In *Miller v. BAC Home Loans Servicing, L.P.,* the Fifth Circuit held that "because the [plaintiffs] always were aware (i) that they had a mortgage debt; (ii) of the specific amount that they owed;

11

(iii) and that they had defaulted," the defendant did not "misrepresent[ ] the character, extent, or amount of the [plaintiff's] debt in violation of § 392.304(a)(8)." 726 F.3d 717, 723 (5th Cir. 2013). With respect to Flores's contentions that PennyMac failed to properly account for or acknowledge payments, demanded more sums than allowed under the Loan, and refused to abide by the terms of the Loan, the undisputed evidence shows Flores admits she failed to make payments on her Loan and subsequently defaulted. *See* Def.'s App. 97 ("Admit that You failed to make one or more payments on the Loan in 2017. Response: Admitted only as to the original version of the Note signed by Plaintiff."); *id.* 21-60. Flores has not offered evidence that PennyMac failed to apply any payment she tendered or that the information contained in the notices of default or notices of acceleration was false, deceptive, or misleading. In fact, Plaintiff has not alleged that any of those communications contains misinformation. *See* Pl.'s Orig. Pet.  Accordingly, Plaintiff has not raised a fact question as to whether the amounts Defendant demanded violated the TDCA.  *See* Def.'s App. 70-82, 87-91.

Flores also alleges that PennyMac violated §§ 392.304(a)(8) and (19) when it "[o]n at least two occasions and as recently as February, 2018, . . . promised to send modification packages to Plaintiff but did not do so at either time, despite Plaintiff's detrimental reliance on PennyMac's representations that modification packages would be forthcoming." Pl.'s Orig. Pet. 6, ¶ 5(c)(3). PennyMac demonstrated that it reviewed Flores for one forbearance plan and four loan

12

modifications between December 15, 2015, and March 10, 2018. Def.'s App. 7. Specifically, on December 15, 2015, Flores was approved for an unemployment forbearance plan. *Id.* On February 16, 2017, PennyMac opened a loan modification review, and because Flores failed to submit a complete application, it was denied on March 30, 2017. *Id.* On March 31, 2017, PennyMac opened another loan modification review, and, because Flores again failed to submit a complete application, PennyMac denied the request on May 13, 2017. *Id.* PennyMac's records reflect that on August 30, 2017, a third loan modification review was opened, but, that due to an incomplete package, Plaintiff's request was denied on October 12, 2017. *Id.* Finally, on February 28, 2018, a fourth loan modification review was opened, and, because Plaintiff once more failed to submit a complete application, the request was denied on March 10, 2018. *Id.*

Plaintiff failed to complete the applications for a loan modification. Therefore, the allegations regarding promises to send modification packages cannot support a TDCA claim as a matter of law.

### Property Code Violations

Flores next claims that PennyMac's "attempts to foreclose the claimed lien on the Property" and "notices predicate to the nonjudicial foreclosure sale(s) were each a violation of Texas Property Code §[ ]51.002(d) and (b) . . . ." Pl.'s Original Pet. 7. Specifically, Flores claims that, "[u]pon information and belief, Defendant failed to give notice before giving notice of acceleration and substitute trustee's sale, in the form and manner, and with the legal capacity at the time of giving such

13

notice(s), to comply with Texas Property Code §[ ]51.002(d), because there was no such notice given." *Id.* Flores also avers that "Defendant gave one or more notices that failed to comply with the requirements of Texas Property Code §[ ]51.002(b), including because of the lack of capacity to give such notice(s) at the time each such notice was given, since such notices were not preceded by valid notices under Texas Property Code §[ ]51.002(d)." *Id.* Flores, however, does not identify any section of the Texas Property Code that creates a private cause of action or provides a remedy for a violation of § 51.002. Indeed, § 51.002 contains no language or provision creating a private cause of action. *See Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 569 (Tex. 2001) ("Section 51.002 establishes the procedures for conducting a foreclosure sale."). And various federal courts in Texas have held that § 51.002 does not otherwise provide for an independent cause of action. *See, e.g., Ashton v. BAC Home Loans Servicing, L.P.*, 2013 WL 3807756, at *4 (S.D. Tex. July 19, 2013) ("This Court has not found any cases that interpret section 51.002 to establish an independent right of action for damages. The section also does not contain its own enforcement mechanism."); *Solis v. U.S. Bank, N.A.*, 2017 WL 4479957, at *2 (S.D. Tex. June 23, 2017) (citations omitted) ("Section 51.002 of the Texas Property Code, however, does not provide a private right of action." ); *Anderson v. CitiMortgage*, 2014 WL 2983366, at *5 (E.D. Tex. July 2, 2014) (citation omitted) ("Under Texas law, there is no independent cause of action for breach of section 51.002"). Thus, Flores's claims for violations of the Texas Property Code fail on this basis alone. But even if a private cause of action did arise

14

under § 51.002, the Court has already found PennyMac had the authority—and the "capacity"—to initiate foreclosure proceedings. PennyMac complied with the Texas Property Code by sending Flores a notice of default on June 22, 2017, which preceded notice of acceleration and notice of sale. Def.'s App. 68-82, 87-90. Accordingly, PennyMac is entitled to summary judgment in its favor on Flores's claims under the Texas Property Code.

In Flores's response, she admits that she "does not assert a private right of action under Texas Property Code Chapter 51." Pl.'s Resp. 7 (ECF No. 17). Rather, she explains that "failures of mortgage servicers to follow the mandates of Chapter 51 . . . are violations of 'applicable law' under the Deed of Trust and provide a basis for . . . breach of contract claims." The Court finds Flores's admission that she does not assert a private right of action under the Texas Property Code to further support granting summary judgment on Flores's Property Code claims. The Court next explains below that these Texas Property Code "violations" cannot serve as the basis for Flores's breach-of-contract claim.

## Breach of Contract

Flores also asserts a breach-of-contract claim against PennyMac. Pl.'s Original Pet. 7. Flores alleges PennyMac breached the Deed of Trust by: (1) failing to give notice before issuing a notice of acceleration and substitute trustee's sale, without the necessary legal capacity; (2) failing to provide adequate notice of sale since PennyMac lacked the authority to give such notice; and (3) failing to provide loan modification packages after representing it would. *Id.* 8. As a result, Flores

15

avers she incurred actual damages by having her possession and enjoyment of the property threatened. *Id.*

Flores contends that PennyMac's violations of Texas Property Code §§ 51.002(b) and 51.002(d) constitute a breach of the Deed of Trust. PennyMac's summary-judgment evidence, however, indicates that it sent Flores a Notice of Default and Intent to Accelerate via certified mail on June 22, 2017, and that it qualified as a mortgage servicer at the time that it issued Plaintiff a Notice of Default and Intent to Accelerate. Def.'s App. 14-20, 70-82. Moreover, the Notice of Default that Defendant issued provided Plaintiff with more than the requisite 20 days to remit payment. *Id.* 78-79. And Defendant's Notice of Substitute Trustee Sale on January 29, 2018, gave Plaintiff more than the requisite 21-day notice prior to the proposed sale date of April 3, 2018, as required under § 51.002(b). *Id.* 87-88.

In response, Plaintiff fails to challenge any of these facts or offer any controverting evidence to suggest Defendant's actions constituted a breach. Instead, Plaintiff stakes her claim on the conclusory statements that Defendant breached the Deed of Trust because it violated Texas Property Code §§ 51.002 and 51.0025. Pl.'s Resp. 7.

This argument fails. Here, Flores neither points to the operative provision in the Deed of Trust that Defendant breached, nor " allege[s] a plausible breach of contract theory." *Ashton,* 2013 WL 3807756, at *4 n.4 (explaining "Defendant did not, as a matter of law, breach the contract by failing to comply with the notice

16

requirements of section 51.002 of the Texas Property Code"). The failure to comply with Texas Property Code §§ 51.002(b) and (d) does not provide Plaintiff with a cause of action prior to an actual foreclosure sale–here, no foreclosure sale occurred. *See Crucci v. Seterus, Inc.*, 2013 WL 6146040, at *3 (W.D. Tex. Nov. 21, 2013) (citations omitted) ("This Court held that because § 51.002(b) and (d) 'set notice requirements based on the date of sale, a plaintiff can only bring a cause of action under either provision if she alleges that a sale has occurred.'").

Flores contends that she "incurred actual damages by having title to, and possession, use and enjoyment of the Property jeopardized, and also his [sic] filing fees and reasonable and necessary attorney fees" Pl.'s Original Pet. 8. But, where no foreclosure took place, these damages only constitute a threat of damages, not actual damages sufficient to satisfy the damages element of a breach-of-contract claim. *See De La Mora v. CitiMortgage, Inc.*, 2015 WL 12803712, at *2 (S.D. Tex. Jan. 26, 2015) ("Plaintiff cannot show damages resulting from any such breach because no foreclosure sale has occurred."). And, though Texas Civil Practice and Remedies Code §§ 37.009 and 38.001(8) allow for an award of filing and attorney's fees "in addition to the amount of a valid [contract] claim," filing and attorney's fees do not constitute actual damages under a breach-of-contract claim. Tex. Civ. Prac. & Rem. Code §§ 37.009, 38.001(8); *see Vianet Grp. PLC v. Tap Acquisition*, 2016 WL 4368302, at *9 (N.D. Tex. Aug. 16, 2016) (reasoning that the Texas Supreme Court would not characterize attorney's fees as damages "if they were subsequently incurred prosecuting a breach of contract claim"). Plaintiff does not

17

assert that any genuine issue of material fact exists as to her breach-of-contract claim. Thus, PennyMac has met its burden to show it is entitled to summary judgment on Flores's breach-of-contract claims.

### Injunctive and Declaratory Relief

Lastly, Flores seeks a restraining order and a temporary injunction under the Court's equitable power and Texas Finance Code § 392.403(a)(1). Pl.'s Original Pet. 8. Also, Flores seeks relief (1) to bar any transfer of interest in the Property or any forcible detainer, (2) to stay any proceeding to foreclose on the Property in another court, and (3) to prevent further violation under the TDCA. Because the Court should grant PennyMac's Motion for Summary Judgment on all of Flores's substantive claims, Flores's requests for declaratory and injunctive relief should be denied. Declaratory judgment and injunctive relief are forms of relief based on underlying claims. *See Collin Cty. v. Homeowners Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167, 170-71 (5th Cir. 1990) (declaratory judgment); *Cook v. Wells Fargo Bank, N.A.*, 2010 WL 2772445, at *4 (N.D. Tex. July 12, 2010) (injunctive relief); *Johnson v. Wells Fargo Bank, N.A.*, 999 F. Supp. 2d 919, 935 (N.D. Tex. 2014) (citations omitted).

Plaintiff also seeks actual and statutory damages under Texas Finance Code § 392.403, as well as exemplary damages. Pl.'s Original Pet. 9. Because the Court recommends granting summary judgment in favor of Defendant and dismissing Plaintiff's claims, it pretermits consideration of damages.

## Recommendation

For the reasons stated, Defendant PennyMac Loan Services, LLC's Motion for Summary Judgment (ECF No. 11) should be GRANTED, and Flores's claims should be DISMISSED.

**SO RECOMMENDED**.

September 4, 2019.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within fourteen days after service of the findings, conclusions, and recommendation. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within fourteen days after service shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).